## Commonwealth v. Linderman

*Scott D. Wiggins, assistant district attorney,* for the Commonwealth.
*Joseph P. Green,* for defendant.

*William H. Mitman Jr.,* for West Chester Publishing Co. Inc. and Kristen Cortazzo.

WOOD, *P.J.,* September 4, 1992—The underlying criminal action in this case charges Paul R. Linderman with assaulting various police officers during a labor disturbance in the city of Coatesville, Chester County, on October 25, 1991. A story concerning that disturbance appeared in the *Daily Local News,* a newspaper of general circulation published in West Chester, Chester County, on October 26, 1991. The story was accompanied by photographs of the confrontation between the police and defendant Linderman, which were apparently taken by one Kristen Cortazzo, an employee of the *Daily Local News.* Ms. Cortazzo had taken a number of pictures of the fracas, and not all of them were published in the *Daily Local News.*

On July 7, 1992, the district attorney of Chester County caused a subpoena to be issued to the *Daily Local News* and Ms. Cortazzo, in which the newspaper and the photographer were asked to produce "photographs and negatives of photographs taken immediately prior to, during, and/or immediately after a disturbance occurring at East Lincoln Highway and Pennsylvania Avenue on October 25, 1991, at approximately 3 p.m. in Coatesville, Pennsylvania." The *Daily Local News* acknowledges the obligation of Ms. Cortazzo to testify as a witness at defendant's trial, if called, and also apparently has no objection to producing those pictures which were in fact published in the newspaper. Both parties, however, object to producing photographs which were taken of the confrontation but not published. I must now decide whether or not to sustain the motion filed by the newspaper and Ms. Cortazzo to quash the subpoena.

I note at the outset that counsel for the newspaper was good enough to concede that Ms. Cortazzo would be obliged to testify, if called. No constitutional or statutory privilege is claimed on her behalf. Therefore, the issue is whether or not the evidence which she obtained by means of her camera is entitled to protection even though the evidence which she obtained by means of her eyesight is not.

This precise issue has been directly addressed in at least one other case in this Commonwealth, of which I am aware: *Commonwealth v. Ruch,* 28 D.&C.3d 488 (1984). In that case, the Honorable Louis Stefan, writing in support of an earlier order issued by the Honorable William H. Yohn Jr., refused to quash a subpoena issued to a newspaper in Montgomery County, seeking photographs of an automobile accident for use in a criminal trial. I note that in *Ruch,* Judge Yohn's order limited production of the photographs to those photographs which would not disclose a confidential news source. There is no contention in this case that any of the materials sought by the Commonwealth's subpoena would disclose a confidential source (unless we define the photographs themselves as a "source"), and so I will not make any such distinctions in the order which I enter at the end of this opinion.

I also observe that the Supreme Court of the United States has struggled with a similar issue in *Zurcher v. The Stanford Daily,* 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978), *rehearing denied,* 439 U.S. 885, 99 S.Ct. 231, 58 L.Ed.2d 200 (1978). The precise issue in *Zurcher v. The Stanford Daily* was whether or not there was any constitutional prohibition against the government's executing a search warrant on the premises of *The Stanford Daily,* a college newspaper, in order to seize unpublished pictures of a confrontation between

certain demonstrators and police officers. The Supreme Court in that case held that there was not. Interestingly enough, the contention of the newspaper in that case was that the government should have employed exactly the means that were employed here, to wit, a subpoena duces tecum, as the means of obtaining the photographs. The contention was that a search warrant carried with it baggage which was threatening to the newspaper's First Amendment rights, whereas the subpoena would not. Accordingly, I think we may count the Supreme Court of the United States as being in support of the Commonwealth's position in the case under consideration.

The *Daily Local News* advances two grounds in support of its motion to quash the subpoena in this case. Their first argument is that the Pennsylvania "Shield Law," 42 Pa.C.S. §5942(a), protects the newspaper from having to produce its photographs. The second contention is that the First Amendment of the Constitution of the United States (and presumably, its counterpart under the state constitution) provides a privilege which protects these photographs. I cannot agree with the newspaper on either account.

The Shield Law provides as follows:

"No person engaged on, connected with, or employed by any newspaper of general circulation ... for the purpose of gathering, procuring, compiling, editing or publishing news, shall be required to disclose the source of any information procured or obtained by such person, in any legal proceeding, trial or investigation before any government unit." 42 Pa.C.S. §5942(a)

It seems to me to be fairly clear as a matter of statutory construction that this statute allows reporters to maintain the confidentiality of persons (or perhaps even things) which provide them with information in their capacities as reporters. The purpose is to protect the confidentiality

of the streams of information, so that those streams will not dry up. It does not seem to me that any of those considerations apply to the photographs in this case. Unless we do serious damage to the plain meaning of the term "source," I can't conceive of that definition covering photographs openly taken of a public incident. They are not sources of information, but are rather records of events.

The *Daily Local News* suggests that the Supreme Court, in the *Taylor and Selby Appeals,* 412 Pa. 32, 193 A.2d 181 (1963) (cited as *In re Taylor* in the Atlantic Reporter) came to a contrary conclusion. Perhaps so, but in my estimation the holding of *Taylor and Selby* has been severely circumscribed by the more recent holdings of the Supreme Court in *Hatchard v. Westinghouse Broadcasting Co.,* 516 Pa. 184, 532 A.2d 346 (1987) and *Sprague v. Walter,* 518 Pa. 425, 543 A.2d 1078 (1988), *appeal dismissed,* 488 U.S. 988, 109 S.Ct. 548, 102 L.Ed.2d 576 (1988). Although both of those cases involved libel trials, in which the newspaper itself was a party, the language used in the cases pretty well overrides the language in *Taylor.* For instance, in *Hatchard,* the court refers to *Taylor* simply as holding that "the term 'source' included inanimate objects such as documents as well as persons." *Hatchard* at 189, 532 A.2d at 348. In *Sprague,* the Supreme Court says that in *Hatchard* it "modified the expansive interpretation of the Shield Law as set forth in *Taylor.*" *Sprague* at 436, 543 A.2d at 1083. Both cases then go on to hold that unpublished information possessed by the newspapers in question was discoverable as long as the information does not reveal the identity of a personal source of information. Judge Walker of Franklin County reached the same conclusion in a civil case involving newspaper photos of an automobile ac-

cident in *Shetler v. Zeger,* 4 D.&C.4th 564 (1989), the latest writing that I can locate on this issue.

Consequently, with respect to the Shield Law, I think the *Daily Local News* misplaces its confidence. *Taylor and Selby* was not quite as expansive as it once was, and the Shield Law may be construed according to its terms.

The long and short of the argument regarding a constitutional privilege is that there is none. As noted by Chief Justice Bell in *Taylor and Selby, supra,* "by no stretch of language can it [the constitution] protect or include under 'freedom of press,' the non-disclosure of sources of information." *Taylor and Selby* at 38, 193 A.2d at 184. To my knowledge, no Pennsylvania appellate court case since has held otherwise.

Consequently, I must enter the following

## ORDER

And now, this September 4, 1992, the motion of the West Chester Publishing Co. Inc. and Kristen Cortazzo for a protective order is denied, and the movants are directed to comply with the subpoena issued by the District Attorney's Office.